AMERICAN BROADCASTING COMPANIES, INC. and ABC Sports, Inc., Plaintiffs,

v.

Muhammad ALI, Defendant.

No. 77 Civ. 1866 (MP).

United States District Court, S. D. New York.

July 22, 1977.

Graubard Moskovitz McGoldrick Dannett & Horowitz, New York City, for plaintiffs, by Emanuel Dannett, Michael W. Sculnick, New York City, of counsel.

Freeman, Meade, Wasserman & Schneider, New York City, for defendant, by David W. Cohen, Herbert M. Hellman, New York City, of counsel.

POLLACK, District Judge.

An application has been made in this suit by plaintiffs for a preliminary injunction against defendant to restrain him from proceeding with the arbitration he has demanded of a labor dispute that has arisen between the parties. The plaintiffs contend on a variety of grounds that neither are they obligated to arbitrate with defendant nor is the dispute arbitrable because it was embraced in and disposed of in a prior litigation between the parties. For the reasons shown hereafter the application for a preliminary injunction is denied.

Jurisdiction of this suit is asserted under Section 301 of the Labor Management Relations Act, as amended, 29 U.S.C. § 185(a), 28 U.S.C. § 1331 and is posited as well on diversity of citizenship and requisite amount, 28 U.S.C. § 1332.

The plaintiffs, American Broadcasting Companies, Inc. and ABC Sports, Inc., (collectively referred to hereafter as "ABC") are signatories to collective bargaining agreements with a labor organization, the American Federation of Television and Radio Artists (AFTRA) of which defendant, Muhammad Ali, is a member in good standing. The arbitration was instituted with the express written consent of AFTRA pursuant to the AFTRA 1973–1976 National Code of Fair Practise for Network Television Broadcasting (the "Code") which sets forth in detail the terms, rates and conditions of employment for those who perform on television. In the attempted arbitration Ali seeks to recover the attorneys' fees, costs and expenses he incurred in his successful defense of a libel action in this Court, *Perez v. Ali*, which arose out of Ali's appearance as a commentator on a publicly broadcast ABC show in which Ali was interviewed by Howard Cosell in connection with the Ali-Wepner heavyweight championship fight on March 24, 1975. Ali received $5,000 for his appearance, described on the check as "Reimbursement of expenses for WWOS."

Following the broadcast, Anthony Perez, Jr., the referee in the fight, commenced an action against Ali, alleging, *inter alia*, that statements made by Ali during the Cosell interview were, as to Perez, malicious, false and defamatory. Ali subsequently commenced a third party action against ABC seeking indemnity and contribution from ABC based on Ali's reliance on ABC to delete prior to publication and broadcast any statements that could expose Ali to liability. The claims over were made with respect to any judgment entered in favor of Perez and against Ali, "together with costs and disbursements plus the expenses incurred in defending the principal action, including attorneys' fees."

The case was tried on the merits before a jury, and after all parties had rested the trial Judge dismissed Ali's claim for indem-

nity against ABC. The case was submitted to the jury, which returned a verdict in favor of Ali. The claim over against ABC was contingent on the jury's finding for Perez and, as such, was never decided, for the jury was instructed that: "If and only if you find for Mr. Perez against Mr. Ali, you must then consider Ali's claim against ABC and ABC Sports." After the jury verdict against Perez, the trial Judge dismissed Ali's remaining third-party claim against ABC for contribution. All parties appealed and the judgment entered was affirmed on appeal by the Court of Appeals with a minor exception not relevant here.

Paragraph 75 of the Code provides that "This Code also applies to all  .  .  . commentators and analysts and persons who criticize, review and/or comment on .  .  . sports;" and "This Code also applies to professional performers appearing as interviewees on entertainment programs. .  .  ." The standard contract set out in the Code furthermore states, ¶ 68 subd. 2(a), that the producer of a program agrees to indemnify the performer against "any and all claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees)" arising out of "acts done or words spoken by Performer at Producer's request".

The standard contract governing parties to the collective bargaining agreements provides for arbitration as follows:

All disputes and controversies of every kind and nature arising out of or in connection with this agreement shall be determined by arbitration with the procedure and provisions of the said AFTRA Code of Fair Practise." ¶ 68 subd. 7–d.

Moreover, the general section of the Code in respect to Arbitration is contained in paragraph 95 by which parties to the collective bargaining agreements have agreed to arbitrate

[a]ll disputes and controversies of every kind and nature whatsoever between any Producer .  .  . and any member of AFTRA, arising out of or in connection with this Code, and any contract or engagement .  .  . in the field covered by this Code, as to the *existence*, validity, construction, meaning, interpretation, performance, nonperformance, enforcement, operation, breach, continuance, or termination of this Code and/or such contract or engagement. .  .  . Code, ¶ 95. (Emphasis supplied)

Plaintiffs claim that there is no agreement to arbitrate the dispute herein since (a) Ali was not paid, hence not employed by them, in connection with the Cosell interview—the $5,000 merely being to cover expenses—and (b) Ali's participation in the Cosell interview does not fall within ¶ 75 of the Code, which defines the "People Covered" by it.

The role of the Court in a case such as this is to decide whether the parties have agreed to submit a specific dispute to arbitration. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 n.7, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960); *ABC, Inc. v. American Federation of Television and Radio Artists*, 412 F.Supp. 1077, 1082 (S.D.N.Y.1976).

The rule governing this determination is that

[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage. *United Steelworkers, supra*, at 582–583, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417–18.

It is clear that plaintiffs' argument that there was no contract or engagement between themselves and Ali with respect to the Cosell interview is an issue expressly reserved by the parties for resolution by the arbitrator (if there is to be an arbitration), and not this Court; for this is a dispute as to the "*existence* .  .  . meaning, interpretation of .  .  . such contract or engagement. .  .  ." Code, ¶ 95 (Emphasis supplied).

The arbitration provision leaves it to the arbitrator to decide whether the contract or engagement between the parties, if

any, was one "in the field covered by this Code." ¶ 95. Facially, in any event, Ali's participation in the Cosell interview appears to fall within the "field covered by this Code" as defined by paragraph 75 thereof.

Plaintiffs contend that Ali, by proceeding in the *Perez* litigation with his third-party action for contribution and indemnification, has waived his right to arbitration on his present contractual claim.

█ There is no doubt that, at least with respect to maritime and ordinary commercial contracts, the right to arbitration may be waived, *Demsey & Associates v. S. S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972), and that a party waives this right "when he actively participates in a lawsuit or takes other action inconsistent with that right", *Cornell & Co. v. Barber & Ross Co.*, 360 F.2d 512, 513 (1966), provided that this inconsistency results in prejudice to the other party. *Carcich v. Rederi A/B Nordie*, 389 F.2d 692, 696 (2d Cir. 1968).

█ Waiver becomes a question to be examined if the claim pursued in Court was arbitrable. Ali's dispute with plaintiffs based on ¶ 94 of the Code was an arbitrable one.* The claims for contribution and indemnification that Ali asserted in the third-party action in the *Perez* litigation, on the other hand, were not arbitrable, since they were not disputes as to the "existence, meaning, interpretation," etc. of the Code and/or any contract or engagement in the field covered by the Code. ¶ 95.

By litigating non-arbitrable claims in a third party proceeding against ABC, Ali did not take any action inconsistent with his right to arbitration of a matter covered by the Network Code. *Cf.* 1B J. Moore, Federal Practice ¶ 0.405[7], at 762 (2d ed. 1974).

Given the strong federal policy favoring arbitration, *see, e. g., Carcich, supra*, and

considering that there has been no litigation of this exact claim, it cannot be said that Ali has waived his right to arbitration thereof.

Plaintiffs also contend that Ali may not arbitrate his claim based on ¶ 94 of the Code because, even if such a claim was neither advanced nor litigated in the third-party action, it could have been, and accordingly is barred under the doctrine of *res judicata*.

█ Briefly stated, the doctrine of *res judicata* holds that "the parties to an action in which a judgment on the merits has been rendered, or their privies, are barred from relitigating the same cause of action in a second proceeding." *Expert Electric, Inc. v. Levine*, 554 F.2d 1227, at 1232–33 (2d Cir., 1977).

█ The limitation of the doctrine to the "same cause of action" is highly significant. Where two distinct causes of action exist, they may be sued on separately notwithstanding the fact that they arise from the same general course of events, *Kernel Kutter, Inc. v. Fawcett Publications, Inc.*, 284 F.2d 675, 676 (7th Cir. 1960); *Bankers Trust Co. v. Pacific Employers Insurance Co.*, 282 F.2d 106, 111 (9th Cir. 1960), *cert. denied*, 368 U.S. 822, 82 S.Ct. 41, 7 L.Ed.2d 27 (1961), that an element of damages is common to both suits, *Herendeen v. Champion International Corp.*, 525 F.2d 130, 134 (2d Cir. 1975), or that both might have been asserted at the same time, *Herendeen, supra*, at 135; *Secor v. Sturgis*, 16 N.Y. 548, 554 (1858) ("It makes no difference that the causes of action might be united in a single suit." *Id.*)

█ The Arbitration Demand herein involves a cause of action distinct from those advanced in the *Perez* litigation, and accordingly, the doctrine of *res judicata* is no

---

* Paragraph 94 of the Code contains the following hold harmless provision:

> In the event that the program for which the performer is engaged is complained of and any prosecution, civil or criminal, private or governmental, shall follow, Producer agrees at his expense to defend the performer and to

> pay all charges and judgments so incurred. This paragraph does not apply to a case where the prosecution is in respect of material furnished by the performer or acts done by the performer without the authorization of the Producer.

bar thereto. *Herendeen v. Champion International Corp.*, 525 F.2d 130 (2d Cir. 1975).

A preliminary injunction is not warranted in the circumstances herein. Plaintiff has failed to demonstrate either (1) probable success on the merits and possible irreparable injury, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *See, e. g., New York v. Nuclear Regulatory Commission*, 550 F.2d 745, 750 (2d Cir. 1977); *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1358 (2d Cir. 1976).

The foregoing shall constitute the findings of fact and conclusions of law required by Rule 52(a), Federal Rules of Civil Procedure.

SO ORDERED.